**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**MEMPHIS GOODWILL INDUSTRIES INC., Defendant.**

No. 2:08–cv–02621–BBD.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 22, 2009.

Deidre Smith, Faye A. Williams, Gwendolyn Young Reams, James Lee, Ronald S. Cooper, Equal Employment Opportunity Commission, Memphis, TN, for Plaintiff.

Jeff Weintraub, Weintraub Stock & Grisham, Memphis, TN, Robbin W. Hutton, Stewart & Wilkinson PLLC, Germantown, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Defendant Memphis Goodwill Industries, Inc.'s ("Defendant" or "Goodwill") motion for summary judgment filed October 13, 2009. (D.E. # 16.) Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") filed a response opposing Defendant's motion on November 11, 2009. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

### I. Background[1]

Nidella Mister ("Ms. Mister") was hired as the Director of Transportation for Goodwill on May 1, 2006 by Tony Martini ("Martini"), Goodwill's President and CEO. (Defendant's Statement of Facts, "SOF" ¶¶ 1, 4.) Travis Keenum served as Vice-President of Human Resources and reported to Martini during Ms. Mister's employment. (Def.'s SOF ¶ 10.) Ms. Mister reported directly to Dave Leutwyler ("Leutwyler"), Vice-President of Operations, who was hired shortly after Ms. Mister. (Def.'s SOF ¶¶ 5, 7.) Ms. Mister's duties required her to plan, develop, organize, and supervise dock personnel and the transport of donated goods, and to coordi-

---

1. Unless otherwise stated, the facts are undisputed.

nate the disposal of unsellable items. (Def.'s SOF ¶ 8.) Donated goods consisted of various items. (Def.'s SOF ¶ 12.) In 2007, Ms. Mister assumed the duty of selling titled goods, namely automobiles. (Def.'s SOF ¶ 9.) Donated goods were first placed in the Goodwill store; if unsold, they were directed to the transportation department as salvage. (Def.'s SOF ¶ 13.) Items that could not be sold or items in disrepair were sent to the trash. (*Id.*)

While salvage reimbursement sales had increased in the months preceding the spring of 2007 (Def.'s SOF ¶ 15), shoe-salvage revenues declined in the first half of 2007 (Def.'s SOF ¶ 17), the cause of which is disputed by the parties. In the summer of 2007, Leutwyler informed a group of managers including Ms. Mister that he needed to preapprove all overtime, ostensibly, to manage costs. (Def.'s SOF ¶ 22, Pl.'s SOF ¶ 22.)[2] In June of 2007, Leutwyler received a complaint about loud music and profanity coming from the dock area. (Def.'s SOF ¶ 23.) Leutwyler approached the workers on the dock and admonished them about the music and use of profane language, commenting that the business was not the "ghetto." (Def.'s SOF ¶ 24.) Ms. Mister later discussed the incident and comment with Leutwyler, informing him that she was offended by the remark and found it racially insensitive. (Def.'s SOF ¶ 25.) Leutwyler apologized to Ms. Mister for his comment and felt that their working relationship improved. Ms. Mister felt his apology was insincere and felt the apology showed some racial animus. (Def.'s SOF ¶ 26, Pl.'s SOF ¶ 26.) Following the conversation with Leutwyler, Ms. Mister received two corrective actions.[3] The first action occurred in early July, the date of which is disputed by the

parties, and the second on August 2, 2007. (Def.'s SOF ¶¶ 27–28, Pl.'s SOF, ¶¶ 27–28.) Goodwill ultimately terminated Ms. Mister on August 12, 2007. (Def.'s SOF ¶ 44.) Following her termination, Ms. Mister filed a charge of discrimination with the EEOC. (Pl.'s Memo. Resp. to Mot. for Summ. Judg. at 4.) The EEOC commenced an investigation and based on its findings, filed a complaint in this Court on her behalf on September 25, 2008 pursuant to Title VII alleging claims of sex and race discrimination, as well as retaliation. (*Id.*)

## II. Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing suffi-

---

**2.** The exact date of this meeting is also disputed by the parties.

**3.** Plaintiff uses the term "write ups" while Defendant uses the term "corrective action" to refer to disciplinary action taken by Goodwill.

cient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Analysis
#### a. Racial Discrimination under Title VII

■ Defendant first argues that it is entitled to summary judgment on Plaintiff's Title VII race discrimination claims. Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff establishes a prima facie case by showing that: (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action and (4) she was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees. *See also Aquino v. Honda of America Inc.*, 158 Fed.Appx. 667, 674 (6th Cir.2005). The *McDonnell Douglas* Court noted that these elements are flexible and should be tailored to each case based on the relevant facts. *McDonnell Douglas*, 411 at 802 n. 13, 93 S.Ct. 1817.

Once the plaintiff establishes his or her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Wade*, 259 F.3d at 461. "The ultimate burden of persuasion rests with the plaintiff to prove that the proffered reasons were a pretext for [unlawful] discrimination." *Id.* In order for an employer to avoid a finding that the employer's non-discriminatory reason was pretext, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998)).

After an employer has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff must produce sufficient evidence that the employer's reasons were pretext. *Wright*, 455 F.3d at 707. A plaintiff may demonstrate pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994)). A plaintiff can rebut a defendant's legitimate, nondiscriminatory reason "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000)).

■ Goodwill does not dispute that Ms. Mister is a member of a protected class due to her race and sex, or that she suffered an adverse employment action. Goodwill argues, however, that she cannot establish any other elements of a prima facie case. In this case, there is an issue of fact as to whether Ms. Mister performed her job in a satisfactory manner, if she suffered an adverse employment action based on her performance, and if she was replaced by Nathan Randl[4], a white male, who was given a job with similar responsibilities. Defendant argues that Ms. Mister was terminated due to her poor work performance, namely her poor management of shoe salvage revenue (Def.'s SOF ¶¶ 37, 40), and failure to adhere to policies regarding overtime pay (Def.'s SOF ¶ 27), as well as Defendant's financial problems (Def.'s ¶¶ 31, 32, 40) which is disputed by the evidence presented by Plaintiff (Pl.'s SOF ¶¶ 21, 30; Leutwyler Dep. at 59, 61, 64). Plaintiff contends that Mr. Randl, the employee hired to replace Ms. Mister was not treated in the same manner, as he was not terminated despite similar disciplinary action taken against him for his performance. (Pl.'s SOF 52.) It should be noted that the quality of the performance of a plaintiff when disparate treatment is alleged, even if the plaintiff "deserved" it—is relevant but not dispositive. However, the treatment received by the complainant may still be pretextual. *See, e.g., McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1261 (10th Cir.1988). The Court finds, however, that the evidence presented by Plaintiff and Defendant leads to genuine issues of material fact as to Ms. Mister's performance on the job prior to her "write ups" and termination. Because material issues of fact exist, summary judgment is not appropriate. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's racial discrimination claim is **DENIED**.

**b. Sex Discrimination under Title VII**

■ Defendant also seeks summary judgment on Plaintiff's sex discrimination claim, arguing that Plaintiff has presented no direct evidence of sex discrimination and that Ms. Mister's termination is solely based on her poor job performance as evaluated by Martini. Direct evidence of discrimination is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003). An employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact at the summary judgment stage of a sex-discrimination action. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir.1996). An objective standard must be used to avoid uncertainties and unfair discrepancies that can plague a judicial effort to determine a Plaintiff's unusual subjective feelings. *Burlington Northern and Santa Fe Ry.*

4. Plaintiff states in its response to the instant motion that Mr. Randl's first name is James. However, Plaintiff's own exhibits refer to him as Nathan Randl. (Pl.'s Resp. to Mot. Summ. Judg., Ex. 11,12.)

*Co. v. White,* 548 U.S. 53, 68–69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Statements demonstrating stereotyped prejudice can be direct evidence of motive. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Evidence that does not rise to the level of direct evidence, may be circumstantial evidence of discrimination. *Louis v. Encore Computer Corp.,* 130 F.3d 444 (11th Cir. 1997).

Plaintiff's primary evidence in support of a sex discrimination claim is a comment made by Leutwyler to Ms. Mister, suggesting that he would not have hired her because the job was physically taxing and that she would not "last" on the job. (Pl.'s SOF ¶ 5, Mister Dep. 266–277.) Ms. Mister refers to them not as words he said verbatim, rather what "he basically said" and further that "I think he had a problem with me in the position." (Mister Dep. at 267.) Although the same elements of Plaintiff's prima facie case for sex discrimination have material issues of fact in dispute, Ms. Mister's opinion alone cannot prove that Leutwyler's comment is evidence of pretext. The Court finds that Ms. Mister's construction of Leutwyler's alleged comments does not rise to the level of direct evidence of discrimination based on sex. By Ms. Mister's own account, Leutwyler never referred to her sex in his alleged comments, and Plaintiff does not provide any evidence that Leutwyler's comments were based on her sex other than her own subjective conclusion. Accordingly, the Court finds that Plaintiff has failed to present evidence to create a genuine issue of fact as to a claim of sex discrimination.

Therefore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's claim of sex discrimination.

### c. Plaintiff's Retaliation Claims under Title VII

 Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee because he or she opposed a practice made unlawful by Title VII or filed a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. § 2000e–3(a). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006). Thus, a plaintiff must demonstrate "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation marks and citations omitted). The significance of an act of retaliation will depend on the surrounding circumstances. *Id.*

 In order to set forth a prima facie case for retaliation, a plaintiff must demonstrate that: 1) he or she engaged in an activity protected by Title VII; 2) the defendant knew the plaintiff engaged in protected activity; 3) the defendant took an action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). In order to establish a causal connection between her protected activity and the challenged action, the plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) (citation omitted). "Although temporal proximity itself is insufficient to find a causal connection, a temporal connection

coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 737 (6th Cir.2006). Protected activities include opposing an act of discrimination made unlawful by Title VII. *See Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir.2002). Opposition includes informal or formal complaints about an employer's act that the employee reasonably believes to be in violation of Title VII. *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir.2002).

If the plaintiff presents sufficient evidence to satisfy her prima facie case, the burden shifts to the defendant to present legitimate, non-discriminatory reasons for its actions. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the defendant's reasons are pretextual. *Id.* "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).

█ Generally in cases alleging disparate disciplinary action, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). However, a plaintiff does not need to " 'demonstrate an exact correlation with the employee receiving more favorable treatment in order to be considered similarly situated; rather ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects.' " *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir.2005) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (internal quotation marks and citation omitted; emphasis in original).)

In the instant case, there is undisputed evidence of Leutwyler's racially insensitive comments, and the informal complaint made by Ms. Mister about such comments. (Leutwyler Dep. at 57–60.) These comments were considered inappropriate enough to warrant Leutwyler receiving disciplinary action and workplace training. (Martini Dep. at 52–53.) Defendant then took action adverse to Ms. Mister by terminating her employment. As the Court finds the first three prongs of Plaintiff's prima facie case are met, the Court now turns to the final element: a causal connection between the protected activity and the adverse employment action. It is on this element that the Court finds the existence of genuine issues of material fact, particularly with respect to the temporal proximity of the events which lead to Ms. Mister's termination and the reasons for it. Thus, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's claims of retaliation.

## IV. Conclusion

For the aforementioned reasons, the Court finds that genuine issues of material fact exist with respect to some of Plaintiff's claims, and Defendant's motion for summary judgment is **GRANTED IN PART**

and **DENIED IN PART.** Defendant Memphis Goodwill Industries' motion for summary judgment as to Plaintiff's claims of race discrimination and retaliation are **DENIED.** Defendant's motion for summary judgment as to Plaintiff's claim of sex discrimination is **GRANTED.**